# MEIER v. SULLIVAN.

PATENTS; INTERFERENCE; RIGHT TO MAKE CLAIMS.

1. Where certain of the counts of an interference, involving the inven-
   tion of a motor-operated ticket-issuing machine, in which the tickets
   were fed from a continuous roll, called for means for locking the
   actuating motor after a spring had been placed under tension, and
   it appeared that in the machine of one of the parties the actuating
   spring was not normally under tension, it was *held* that he had no
   right to make such claims.

2. Where one of the counts in an interference read: "In a ticket-issuing
   machine, a ticket strip feeding mechanism, devices for determining
   the degree of movement of said feeding mechanism, key levers for
   positioning said devices, and means for positively restoring said
   key levers to their normal raised position after they have been
   depressed,"—and the Commissioner found that the machine of one
   of the parties contained "no means for positively restoring said key
   levers to their normal raised position after they have been
   depressed," and that he was therefore not entitled to make the claim
   of the issue, it was *held* that the Commissioner erred in finding that
   the claim called for any particular means for accomplishing the
   desired result, and that as in the machine of such party, when a
   particular key was depressed the spring was tensioned and the
   release of the key released the tension, and the key was at once
   restored to its normal position, his device answered to the require-
   ments of the claim.

3. A statement by one of the parties to an interference, involving the
   invention of a motor-operated ticket-issuing machine, in which the
   tickets are fed from a continuous roll, made to the other party,
   that a motor-driven machine would be a good thing, and that the
   devising of such a machine would be undertaken, does not amount
   to a disclosure, even though the relation of employer and employee
   may exist between them. (Following *Kreag* v. *Geen*, 28 App. D. C.
   437, and *Orcutt* v. *McDonald*, 27 App. D. C. 228.)

No. 1018.   Patent Appeals.   Submitted March 14, 1916.   Decided April
                            3, 1916.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.

*Affirmed in part and reversed in part.*

The facts are stated in the opinion.

*Mr. Hugh K. Wagner* and *Mr. Edwin S. Clarkson* for the appellants.

*Mr. Paul Bakewell* and *Mr. Eugene C. Brown* for the appellee.

Mr. Justice ROBB delivered the opinion of the Court:

This is an appeal from concurrent decisions of the Patent Office in an interference proceeding awarding priority of invention to the appellee, William L. Sullivan, on the ground that the appellants, Albert J. Meier and William L. Swift, have no right to make the claims of the issue.

The invention is expressed in the following counts:

"1.   A ticket-issuing machine provided with a ticket strip feeding mechanism that comprises an actuating member, a spring for moving said member in one direction, a motor-actuated element for moving said member in the opposite direction so as to store up energy in said spring, and means for locking said actuating member after said spring has been placed under tension."

"5.   A ticket-issuing machine provided with a ticket strip feeding mechanism that comprises an actuating member, a spring for moving said member in one direction, a motor-actuated element for moving said member in the opposite direction so as to store up energy in said spring, means for locking said actuating member after said spring has been placed under tension, devices which control or limit the degree of movement of said actuating member, and means under control of the operator for releasing said actuating member and for setting up or arranging in operative position one of the other of said devices."

"3. 'A ticket-issuing machine provided with mechanism under control of the operator for issuing one or a plurality of tickets, resilient means forming part' of said ticket issuing mechanism, a motor-driven element for storing up energy in said resilient means, means for automatically locking said mechanism after said resilient means has been placed under tension, and means controlled by the operator for releasing said locking means."

"4. In a ticket-issuing machine, a ticket strip feeding mechanism, devices for determining the degree of movement of said feeding mechanism, key levers for positioning said devices, and means for positively restoring said key levers to their normal raised position after they have been depressed."

As will be gathered from a reading of the above claims, the invention relates to a motor-operated ticket-issuing machine, in which the tickets are fed from a continuous roll. The claims originated in the Sullivan application. In his device, as in that of the appellants, the tickets are issued through the release of a tensioned spring, but there is this difference between the two machines. In appellee's machine this spring, after tickets have been issued, is again placed under tension by the motor and locked in that position, ready for the next operation. It thus is apparent that in this machine the actuating spring is normally under tension and ready to respond the instant the key is depressed. In appellants' machine the actuating spring is not normally under tension. It follows, therefore, that normally the machine is dead. The Examiner of Interferences and the Board of Examiners in Chief both ruled that counts 1, 2, and 3 each calls for means for locking the actuating motor after the spring has been placed under tension, and that appellants' application does not disclose such a construction. At the hearing before the Assistant Commissioner, the correctness of this ruling was not questioned, the argument being that the interference should be redeclared, making the issue claim 1 of an amendment to the Sullivan application. The interference was not redeclared, and we therefore will accept without further discussion the ruling of the Patent Office as to those three claims.

Count 4 was awarded to the appellee on the theory that appellants' machine contained no "means for positively restoring said key levers to their normal raised position after they have been depressed." In appellants' machine they are restored by springs. In other words, when a particular key is depressed a spring is tensioned, and the release of the key relieves the tension, and the key instantly is restored to its normal position. Without going into details, it is sufficient to say that in the machine of the appellee there is a rigid connection between the key lever and the moving parts of the machine, whereby this lever is restored to its normal position when the device is operated. But the Patent Office, it appears to us, has entirely overlooked the fact that this claim does not call for any particular means for accomplishing the desired result. Any means, therefore, which, by itself and independently of anything else, restores these key levers to their normal raised position, responds to the requirements of this claim. Certainly the spring of appellants does this, and, in our opinion, the Patent Office was in error when it ruled otherwise.

It appears that Mr. Sullivan, the appellee, was employed by the assignee of the appellants, the Elmer Manufacturing Company, now called the Temco Manufacturing Company, under a contract to work as an inventor, and to assign to his employer all inventions appertaining to its business, made during the term of his employment, "and all others relating to which he files any application for letters patent within three years after the cessation of his said employment." He entered this employment the latter part of October, 1909, and left about the middle of October, 1911. In his preliminary statement he alleges that he conceived the invention in issue about the 7th of January, following. His application was filed July 29th, following. During the term of his employment a ticket-issuing machine substantially like that of the appellants, except that it was operated by a foot pedal instead of by motor, was devised, constructed, and successfully placed on the market. While there is evidence that appellants, who are connected with the Temco Company, expressed to Mr. Sullivan the view that a motor-

driven machine would be a good thing, and that the devising of such a machine would be undertaken, it stops there. Of course such evidence, even as between employer and employee, does not amount to a disclosure. *Kreag* v. *Geen,* 28 App. D. C. 437; *Orcutt* v. *McDonald,* 27 App. D. C. 228. The invention lies not in the change of motive power, but in the means employed to effect the change. Whether, under the contract, the Temco Company has any right to the invention of appellee, is not an issue in this proceeding.

The decision of the Patent Office is affirmed as to counts 1, 2, and 3, and reversed as to count 4.

*Affirmed in part and reversed in part.*

A petition for rehearing was denied April 8, 1916.